Deogracias Viera Sosa, Petitioner and Respondent, *v.* Puerto Rico Racing Commission, Respondent; San Juan Racing Association, Intervener and Petitioner.

No. 12431. Submitted April 4, 1960.—Decided May 9, 1960.

*Córdova & González* and *Alberto Picó* for petitioner. *Abraham Díaz González* for petitioner-respondent. *Germán Rieckehoff Sampayo* for respondent.

MR. JUSTICE SALDAÑA delivered the opinion of the Court.

On June 30, 1954 the Puerto Rico Racing Commission granted the San Juan Racing Association, Inc., an exclusive license for the operation of a race track, for a period of ten years. Accordingly, upon issuing a license to Mr. Deogracias Viera Sosa to operate the Quintana Race Track during the year 1956, the Racing Commission imposed on him the following condition: "This license shall be effective during the calendar year 1956; PROVIDED, that if during said term the new El Comandante Race Track is ready to begin operation, it shall expire automatically, as provided in paragraph 6 of section 4 of Licenses of the Racing Regulations in force." Some time later, on May 18, 1956, Deogracias Viera Sosa filed a petition before the Racing Commission in which he challenged the said condition. He alleged that, pursuant to the

Racing Act of Puerto Rico (15 L.P.R.A. §§ 181–193) and to its own regulations, the Commission lacked authority (1) to grant an exclusive license for a period of ten years for the operation of the racing game; and (2) to condition the license issued for the operation of the Quintana Race Track during the year 1956 so that it would expire automatically ". . . if during said term the new El Comandante Race Track is ready to begin operation . . . ." This case was consolidated, for the purposes of a hearing and decision, with another proceeding which was commenced on Sept. 27, 1956 by virtue of an order entered by the Racing Commission directing Deogracias Viera Sosa to appear ". . . to show cause why the condition imposed on his license should not be given full force and effect . . . to the effect that it will be cancelled as soon as the new race track begins to function." On May 24, 1957, after the administrative trial was held with all its proceedings, the Racing Commission entered a decision in which (1) it dismissed the petition presented by Deogracias Viera Sosa on May 18, 1956; and (2) it decided that Deogracias Viera Sosa should not be granted a new license to operate the Quintana Race Track during the year 1957.[1]

As we shall presently see, the facts which the Racing Commission deemed proved are sufficient basis to support its decision holding that the Quintana Race Track was in deplorable conditions, that it was completely inadequate for the sport of horse racing and that it could not be reconstructed, enlarged or improved, because of the restrictions imposed by the Zoning Regulations in force. On the other hand, the conclusions reached by the Racing Commission on those fundamental

---

[1] It was set forth that when the order to show cause was issued, there was the possibility that the new race track would be inaugurated before the expiration of the year 1956, for which Viera Sosa had a license "subject to cancellation as soon as the new race track would begin to function." However, since Viera operated under his license during the whole year 1956, before the question raised under the order to show cause was decided, ". . . the condition imposed on his license became academic and the only thing left to be considered is whether a new license lies . . . for the year 1957."

facts are fully supported by the evidence introduced during the administrative hearings. The difficulty lies in that the Racing Commission, by way of dictum, stated in its opinion other additional and unnecessary "grounds" in support of its decision. It stated among other things: (1) that Deogracias Viera Sosa was precluded by his own conduct, applying the doctrines of "waiver", "laches" and "estoppel," from raising any challenge against the exclusive license granted to the San Juan Racing Association to operate a race track for a term of ten years; (2) that the Racing Commission was authorized by law to grant such an exclusive license for the operation of a race track; and (3) that there were no irregularities in the issuance of the license to operate El Comandante meriting the intervention of the Commission, affecting the license of the San Juan Racing Association or justifying its cancellation.

Having filed the motion for reconsideration required by law, Deogracias Viera Sosa appealed by certiorari to the Superior Court, San Juan Part. See 15 L.P.R.A. § 188. He requested that the decision of the Racing Commission of May 24, 1957 be set aside; that it be declared that the Commission lacks legal authority to issue an exclusive license for the operation of a race track or to condition Deogracias Viera's licenses to the operations of El Comandante Race Track; and lastly, that the Commission be ordered to issue to him a conditional license for the operation of a race track, subject to reasonable requirements, until he constructs a new one. He alleged in support thereof that the Racing Commission committed the following errors:

"I . . . in deciding that the petitioner is precluded from questioning the authority of the Racing Commission to grant an exclusive license for the operation of a race track for a term of (10) years to the San Juan Racing Association, Inc.

II . . . in deciding that the petitioner is precluded from questioning the authority of the Racing Commission to condition, in the manner it did, the license to operate his race track during the year 1956.

III . . . in deciding that it is authorized to grant a license for the operation of an exclusive race track for a term of (10) years.

IV . . . in supporting its administrative action on orders and records approved in the petitioner's absence and of which he was not timely notified.

V . . . in denying the request of renewal of petitioner's license to operate his Quintana Race Track during the year 1957, notwithstanding the petitioner's repeated willingness to comply with the requirements established by said Commission for the issuance of a provisional license to operate his race track during such time as is granted him to construct another, in accordance with the requirements fixed by the Commission and pursuant to the provisions in the Puerto Rico Racing Act; 15 L.P.R.A. § 184 (5).

VI . . . in acting with passion, prejudice and partiality."

The San Juan Racing Association, Inc., which had participated previously as "oppositor" in the whole administrative proceeding of the case, appeared before the Superior Court as intervener. The petition for certiorari was definitively submitted by the parties on the basis of the complete record of all the proceedings held before the Racing Commission, which contained the documentary and oral evidence presented and admitted therein. Finally, on November 20, 1957 (and later, on reconsideration, on December 11, 1957) the Superior Court decided briefly: (1) that Deogracias Viera Sosa was not precluded from challenging the power of the Racing Commission to grant the San Juan Racing Association an exclusive license for the purpose of operating a race track for a term of 10 years; (2) that the Racing Commission lacks legal authority to grant an exclusive license for the operation of a race track; (3) that all the evidence set forth in the record of the administrative hearings was admissible in law and that all the conclusions reached by the Racing Commission on facts pertinent to the controversy are fully supported by the evidence, especially those referring to the inadequate and deplorable conditions of the Quintana Race Track; (4) that the Racing Commission was never in a position to judge and determine whether Deogracias Viera Sosa was entitled to a

provisional license to operate his race track during the time granted him to construct another new race track, since that question was never duly raised before the Racing Commission in the course of the administrative proceedings; (5) that the Racing Commission ". . . had before it sufficient evidence to reach the findings of fact conducive to the determination made in its order of May 24, 1957"; and (6) that the Racing Commission did not act with passion, prejudice and partiality in deciding the case. In the dispositive part of its judgment the Superior Court decreed the following: *"None of the errors committed suffices to reverse the order of May 24, 1957, and the same is hereby affirmed."* (Italics ours.)

■ On January 3, 1958 the intervener San Juan Racing Association filed an appeal against that judgment of the trial court. Seven months later, after the appeal was perfected in this Court and after the briefs of both parties were filed, Viera Sosa requested the dismissal of the appeal on the basis of the doctrine laid down in *Concepción* v. *Board of Accountancy*, 80 P.R.R. 190 (1958). He correctly stated that, pursuant to § 14 of the Judiciary Act of 1952 (4 L.P.R.A. § 37), the judgment rendered by the Superior Court in the case at bar was unappealable. However, since the appeal had already been duly grounded, the intervener requested that the appeal be considered as a petition for certiorari, without objection from the opposite party. Therefore, by Order of October 31, 1958, this Court dismissed the appeal and decided to continue entertaining the case as a petition for certiorari.[2]

■■ Now then, on what grounds does the intervener attack the judgment? It is alleged that ". . . the judgment of

---

[2] In dismissing the appeal taken in the *Concepción* case for lack of jurisdiction, we remarked that ". . . this does not affect the right of [the appellant] to file in this Court a petition for certiorari duly grounded." It should be observed that the following was also stated therein: "We could not at this time consider the case as if it were a petition for certiorari. In fact, the appellant has not as yet filed the brief required by our Regulation (4 L.P.R.A. App. I, R. 10). We do not know what errors he assigns to the lower court nor the grounds on which to seek review by certiorari." *Supra* at 191, n. 1.

the lower court, although it allegedly affirms the decision of the Racing Commission of May 24, 1957, it actually reverses the same insofar as said decision denied Viera Sosa's petition of May 18, 1956." Consequently, based on that premise, the intervener alleges that the Superior Court erred in deciding (1) that Viera Sosa is not precluded from challenging the validity of the license of the San Juan Racing Association; and (2) that said exclusive license for a period of ten years is void since the Racing Commission lacks the legal authority to grant it. Although in its brief it discusses both questions on their merits, it also sets forth that ". . . the Superior Court erred in trying to decide a case, which, because it was academic, could not and should not be object of the judicial decision in this case, namely, the validity of the license of the San Juan Racing Association." This is not all. At the end of its brief the intervener merely requests this Court to modify the judgment of the trial court ". . . by eliminating therefrom those pronouncements which seek to modify the decision of the Racing Commission of May 24, 1957 . . . ."

On his part, Viera Sosa maintains in this Court that the two pronouncements of the Superior Court, challenged here by the intervener, are correct and should be affirmed. He asserts that ". . . the questions involved in the [judgment appealed from] are of great public interest insofar as they deal with actions . . . performed in violation of the law which vitally affect petitioner's interest in participating in the race track business in Puerto Rico . . . ." He adds that ". . . Petitioner's request to build a new race track is pending determination at this very moment and his request will not be decided by the [Racing Commission] until the decision of the Supreme Court on the validity of the provision of exclusiveness contained in the license issued to the intervener is made known . . . ." That is why he urgently prays, as the fundamental basis for his petition, that we decide the questions proposed by the intervener on their merits.

We believe that the petition for certiorari must be denied without considering the merits nor deciding the issues raised on their merits. That is the inescapable conclusion if we analyze two points: *first*, what the Racing Commission really decided and determined in its decision of May 24, 1957; and .*second*, the true scope of the judgment of the trial court which is involved in the present proceeding, disregarding the unnecessary pronouncements which were set forth in the opinion which has given rise to this petition.

The controversy before the Racing Commission in the case at bar was limited, under the order to show cause, to the sole question of whether it was proper to issue to Deogracias Viera Sosa a new license to operate the Quintana Racing Track during the year 1957. The Commission decided this question adversely to Deogracias Viera Sosa, on the following findings of fact: "The evidence presented and the inspection made by the Commission confirmed in essence what the Commission had determined years previously, what the report of the Commission of Commonwealth and Municipal Government of the Senate of Puerto Rico of April 1, 1953, had indicated, what the Public Order Commission of the Senate had reiterated in its reports of April 14 and October 6, 1954, what the petitioner impliedly admitted in his testimony before the Public Order Commission of the Senate on March 1953: that the petitioner's race track is inadequate. It is inadequate insofar as its capacity and comfort for spectators is concerned. The field area has no alleys to facilitate the movement of the public. Filled to capacity, without deducting any space for alleys, it seats 2394 persons. The grandstand section could seat up to 871 persons, without alleys. The reserved seats have a capacity of 592 persons. Some hundreds of persons standing can be accommodated in the field area, but in the others there is no substantial standing room. The capacity of the race track in the grandstand and reserved seats is particularly inadequate. The race track is inadequate as to its sanitary facilities in the three sections. Those facilities

are inadequate in quantity and poor in quality. The canteen facilities are inadequate. The race track is inadequate in its installations for the handling of wagers and the facilities for informing the public thereof, are primitive. The race track offers inadequate facilities to jockeys, which are extremely poor. The building for the pool, ancient frame construction with zinc roofing, is in bad conditions. The facilities of access to the race track surroundings, as well as the parking facilities, are inadequate. The jury box, placed in front of the grandstand hinders the view of part of the track from part of the public. As a whole, the race track does not offer the aspect nor the conveniences that a race track should offer in Puerto Rico nowadays. The zoning regulations of the Planning Board of Puerto Rico prohibit the petitioner to make improvements in his physical plant since the race track is located in a zone that is not proper for race tracks." As a consequence thereof the Commission expressly set forth in its decision: "Completely irrespective of the validity of the license of the San Juan Racing Association Inc., the petitioner will not be granted a license for the year 1957 because his race track is completely inadequate, and even if he were willing to reconstruct, enlarge or improve it, it is not permissible pursuant to the zoning regulations in force.

"Up to now and notwithstanding the inadequacy of the Quintana Race Track, a license has always been granted to it because there was no adequate race track in Puerto Rico and because it would have been prejudicial to horse racing as a sport to suspend the races altogether until an adequate race track could be constructed. Today when there is a modern and adequate race track it is completely improper to authorize races in an inadequate race track. There is no justification whatever for compelling the public, if it wishes to see races, to undergo the discomforts and limitations of petitioner's race track, when there is another one available which does not have those discomforts and limitations. The progress made by the racing sport in Puerto Rico with the new race track and

the possibilities of further progress offered by the new race track can not and should not be wasted, as it would be wasted if the petitioner were granted the privilege of operating a race track which years ago ceased to deserve such privilege."

All the conclusions which have just been literally copied because they constitute the gist of the case, are fully supported by the evidence set forth in the record of the administrative proceeding. It was so declared by the Superior Court in the judgment appealed from: "The conclusions of the Commission on facts pertinent to the controversy are fully supported by the evidence. Especially the conclusions . . . with regard to the conditions of [Viera Sosa's] race track. A mere examination of the photographs presented by the intervener and the testimony of [Viera Sosa] himself support each and every one of the findings of fact reached by the Commission as to the capacity of the physical plant and its deplorable conditions." That view of the trial judge is buttressed by the careful analysis we have made of all the evidence introduced before the Commission. We are confronted, then, with the following situation: At the time when the Racing Commission entered its decision in the case at bar (a) Viera Sosa's license to operate the Quintana Race Track during 1956 had already expired; and (b) it was not proper to grant Viera Sosa a new license to operate the Quintana Race Track during 1957. This explains why the Racing Commission also had to dismiss the petition presented by Viera Sosa on May 18, 1956, challenging the validity of the condition imposed on his license to operate the Quintana Race Track during the year 1956. As previously stated, the said condition provided that the license for 1956 ". . . shall expire automatically . . . if during said term the new El Comandante Race Track is ready to begin operation . . . ." There is no doubt that on May 18, 1956 Viera Sosa had standing to challenge the validity of such condition imposed on his license which impaired and affected adversely his legitimate interests. Obviously to decide whether

said condition was valid the Commission would have had to determine whether, pursuant to the Racing Act and its own regulations, it was authorized to grant to the San Juan Racing Association an exclusive license for a term of ten years for the operation of a race track. Likewise, in the absence of the fundamental facts which it considered proven, the Commission would have had to decide those questions in order to determine whether Viera Sosa should be granted a new license to operate the Quintana Race Track during 1957. However, we can see very clearly that that was not the situation confronted by the Racing Commission upon entering its decision in the case at bar. Viera Sosa operated the Quintana Race Track under his license during the whole year 1956 and the condition imposed thereon also expired by the mere lapse of time. Besides, due to the deplorable and inadequate conditions of the Quintana Race Track it was not proper to issue to Viera Sosa a new license to operate his race track during 1957. Thus, reducing the matter to its simplest form Viera Sosa had lost his standing to challenge the license granted to the San Juan Racing Association. Viera Sosa's mere general interest in the sport of racing or his intention of requesting a license in another different and separate proceeding to construct a new race track did not make him a prejudiced, aggrieved or adversely affected party by the granting to another person of an exclusive license to operate a race track. *Cf.* *Perkins* v. *Lukens Steel Co.*, 310 U. S. 113 (1940). There is no provision of law in Puerto Rico authorizing Viera Sosa to vindicate any general interest which the public may have in this case. On the contrary: the litigant, to have standing in an administrative or judicial proceeding, must show an injury or prejudice to a particular, real and concrete right of his own. *Cf. Commonwealth* v. *Aguayo*, 80 P.R.R. 535 (1958).

In view of the foregoing we must not hesitate to designate as dicta the additional "grounds" stated by the Commission in its decision, to wit: (1) that Viera Sosa was prevented by his own conduct, applying the doctrines of

"waiver," "laches" and "estoppel," from raising any challenge to the exclusive license granted to the San Juan Racing Association to operate a race track for a term of ten years; (2) that the Racing Commission was authorized by law to grant such exclusive license for the operation of a race track; and (3) that there were no irregularities in the issuance of the license to operate El Comandante meriting the intervention of the Commission, affecting the license of the San Juan Racing Association or justifying its cancellation. Likewise, the pronouncements of the trial court were unnecessary to the effect that those additional "grounds" adduced as dicta by the Racing Commission are erroneous, as a question of law. More so: in the dispositive part of its judgment the Superior Court merely decreed that the decision of the Racing Commission of May 24, 1957 shall be affirmed. That result is correct based on the findings of fact of the Commission which, as we previously stated, are supported by substantial evidence.

Now it is plain what we meant when we said that this appeal must be dismissed without considering or deciding on the merits the issues raised in this Court. The appeal lacks objective finality because regardless of how we decide the questions raised therein it would always be necessary to affirm the judgment challenged. As we have repeatedly said the review in this Court is taken from the judgment and not from the grounds or reasonings on which the opinion of the trial court is based. *Corrada* v. *Municipal Assembly*, 79 P.R.R. 345, 350 (1956). It is not possible to maintain, as the intervener-petitioner alleges, that all the determinations of law contained in the opinion of the lower court would operate as res judicata or as collateral estoppel between the parties in any subsequent controversy involving the same matter or transaction. According to the doctrine of collateral estoppel, where a question of law *essential* to the judgment is actually litigated and determined by a final judgment, the determination is conclusive between the same parties in a subsequent action on a different cause of action, where the latter arose

out of the same subject matter or transaction, unless injustice would result from the application of the doctrine of collateral estoppel. See Restatement, *Judgments* (1942) § 70; Scott, *Collateral Estoppel by Judgment*, 56 Harv. L. Rev. 1 (1942); and *Developments in the Law—Res Judicata*, 65 Harv. L. Rev. 818, 843–847 (1952). But it is obvious that the determinations of law challenged by the intervener in this proceeding are not essential or necessary to uphold the judgment appealed from. *Cf. Cambria v. Jeffrey*, 29 N.E.2d 555 (Mass. 1940); *Schofield v. Rideout*, 290 N. W. 155 (Wisc. 1940) and *Karameros v. Luther*, 17 N.E.2d 779 (N. Y. 1938).

Besides, contrary to what the intervener assumes, the judgment of the Superior Court is limited to *affirming* the decision of the Racing Commission. Its contention is erroneous to the effect that ". . . the judgment [of the lower court] although it allegedly affirms the decision of the Racing Commission of May 24, 1957, it actually reverses the same insofar as said decision denied Viera Sosa's petition of May 18, 1956." Hence, the judgment entered was favorable to the intervener and the latter did not have ultimately any reason or ground to request the review thereof. Having established this, it is obvious that the findings of fact or conclusions of law adverse to the intervener made by the Superior Court by way of mere obiter dictum could never be conclusive against the San Juan Racing Association. The reason is simple: where a litigant can not request nor obtain a review of the findings of the trial court which are adverse to him, because the decision entered ultimately resulted in his favor, it is not proper to apply the doctrine of collateral estoppel against him. See Scott, *Collateral Estoppel by Judgment*, 56 Harv. L. Rev. 16–17 (1942) and cases cited therein.

The judgment appealed from will be affirmed and the writ issued quashed.

Mr. Justice Belaval and Mr. Justice Serrano Geyls did not participate herein.